UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                                              Case No.: 1-03-26450-dem

ISRAEL MICHAEL ROSNER
a/k/a MICHAEL ISRAEL ROSNER                 Chapter 7

                        Debtor.
--------------------------------------------------------x

CADLEWAY PROPERTIES, INC., as assignee
of MERRILL LYNCH BUSINESS FINANCIAL       Adv. Pro. No. 1-04-01371-dem
SERVICES INC.,
                        Plaintiff,
              -against-

ISRAEL MICHAEL ROSNER
a/k/a MICHAEL ISRAEL ROSNER,

                        Defendant.
--------------------------------------------------------x
In re:                                                              Case No.: 1-03-26451-dem

ERVIN FRIEDMAN                                       Chapter 7

                        Debtor.
--------------------------------------------------------x

CADLEWAY PROPERTIES, INC., as assignee
of MERRILL LYNCH BUSINESS FINANCIAL       Adv. Pro. No. 1-04-01372-dem
SERVICES INC.,
                        Plaintiff,
              -against-

ERVIN FRIEDMAN

                        Defendant.
--------------------------------------------------------x

## <u>DECISION AND ORDER</u>

APPEARANCES:

Glenn P. Berger, Esq.
Jaffe & Asher LLP
Attorney for Plaintiff
600 Third Avenue
New York, New York 10016

Joseph L. Fox, Esq.
Koerner Silverberg & Weiner
Attorney for the Defendants
112 Madison Avenue
New York, New York 10016

DENNIS E. MILTON
United States Bankruptcy Judge

This matter comes before the Court on the motion of Cadleway Properties, Inc.

("Cadleway" or the "plaintiff") for summary judgment pursuant to Rule 7056 of the Federal

Rules of Bankruptcy Procedure ("Bankruptcy Rules") denying a discharge to the defendant

debtors Israel Michael Rosner ("Rosner") and Ervin Friedman ("Friedman")(collectively the

"defendants") under 11 U.S.C. §§ 727(a)(2), 727(a)(4) and 727(a)(5).   Cadleway also seeks

dismissal of  the defendants' Third, Fourth, Fifth, Sixth, Seventh and Eighth Affirmative

Defenses as a matter of law.   For the reasons set forth in this decision, Cadleway's motion to

deny the defendants a discharge is denied on all counts.  Cadleway's motion to dismiss certain

affirmative defenses of the defendants is granted as to the Sixth, Seventh and Eighth Affirmative

Defenses and denied with respect to the defendants' Third, Fourth and Fifth Affirmative

Defenses.

**<u>JURISDICTION</u>**

This Court has subject matter jurisdiction over this controversy pursuant to 28

U.S.C. §§1334(b) and 157(b)(2) and the Eastern District of New York standing Order of

reference dated August 28, 1986.  This decision constitutes the Court's finding of facts and conclusions of law to the extent Fed. R. Bank. P. 7052 requires.

## FACTUAL BACKGROUND

On  June 29, 2004, Merrill Lynch Business Financial Services Inc. ("Merrill") commenced these two adversary proceedings.  Merrill, a judgment creditor of the defendants, claimed that because the defendants had misrepresented and fraudulently concealed their assets, they should be denied a discharge under Sections 523 and 727 of the Bankruptcy Code.

In 1988, the defendants, who are brothers-in-law, incorporated UTI Time Corporation ("UTI"), a company which imported and sold low-priced watches. See Affidavit of Israel Michael Rosner in Opposition to Plaintiff's Motion for Summary Judgment dated March 2, 2006 ("Rosner Affidavit") at 3; Affidavit of Ervin Friedman in Opposition to Plaintiff's Motion for Summary Judgment dated February 29, 2006 ("Friedman Affidavit") at 3.  From 1988 to 1999, UTI had lines of credit at various financial institutions. Id.  In early 1999,  Gerald Silberman ("Silberman"), a loan officer for Merrill, approached the defendants and recommended that they move UTI's  financing to Merrill. Id.

With Silberman's guidance, the defendants prepared and submitted an application.  In addition to financial information concerning UTI,  Rosner and Friedman each submitted personal financial statements.  Id. at 4.  Rosner, in his personal financial statement, represented that, among other things, his real property consisted of the following:

> 1. Residential real property located at 63 Joseph Avenue, Staten Island, New York, jointly owned by Rosner and his wife, valued at $600,000 on which there was a total mortgage indebtedness of $70,000; and

> 2. A summer home in Monticello, New York, that Rosner and his wife jointly owned free and clear of mortgages, valued at $75,000.

See Memorandum of Law in Support of Consolidated Motion of Plaintiff for Partial Summary

Judgment dated January 9, 2006 ("Plaintiff's Memo") at 3.  Friedman, in his personal financial

statement, represented that, among other things, his real property consisted of the following:

> 1. Residential real property located at 278 Crafton Avenue, Staten Island,
> New York, jointly owned by Friedman and his wife, valued at $350,000
> on which there was a total mortgage indebtedness of $110,000; and

> 2. A summer home in Monticello, New York, that Friedman and his wife
> jointly owned free and clear of mortgages, valued at $75,000.

Id.  These figures represented estimates, since Merrill did not require the defendants to have their

property appraised. See Rosner Affidavit at 5-6; Friedman Affidavit at 5-6.  The accuracy of

these estimates was questionable.  For example, the defendants estimated their bungalows to be

worth $75,000 each based upon a "larger and nicer bungalow" being sold for $110,000.  Id.

Upon receipt of the application, Merrill granted UTI a line of credit in exchange

for a security interest in UTI's equipment and a personal guarantee from each of the defendants[1].

See Plaintiff's Memo. at  4-5. The liquidity the line of credit offered was very helpful to UTI.

See Rosner Affidavit at 6; Friedman Affidavit at 6.   However, by the year 2000, the company's

business was suffering.  This decline in business was due in large part to bankruptcy filings and

restructurings of its principal clients including Caldor, Ames, Jamesway, Clover, Venture,

McCrorys and Woolworth.  Id.  To keep their business operating, the defendants invested a great

deal of their personal savings into UTI.  Id. at 6-7.  However, greater sums of money for

inventory were still necessary. Id. at 7.

The defendants realized that their only remaining source of funding was the

---

[1] The loans were not secured by the defendants' real or personal property.

equity in their Staten Island homes and considered placing second mortgages on them.  See Rosner Affidavit at 7; Friedman Affidavit at 7.   However, Sylvia Friedman and Judy Rosner, the defendants' wives, refused to allow their husbands to encumber their homes to make additional investments in UTI.  Instead, each of the wives agreed to buy her husband's half-interests in the respective homes and to finance the equity in the homes to the maximum.  Defendants' Joint Memorandum in Opposition to Motion for Summary Judgment dated February 28, 2006 ("Defendants' Memo") at 3.   In exchange, each of the wives agreed to pay her husband's one-half of the equity and use the balance to service the mortgages and pay for future monetary needs. Id.

The Friedman transfers occurred as follows:

1.    On June 18, 2001, Friedman deeded his half interest in the Staten Island home to Sylvia Friedman.

2.    Later in June 2001, Sylvia Friedman obtained a second mortgage on the home in her name.

3.    Sylvia Friedman then paid Friedman $153,500[2] in consideration for the transfer in the following intervals:

a.    On July 3, 2001, Sylvia Friedman transferred $10,000 from her own personal account (Account No. 5991929795) to Friedman's personal account (Account No. 56290828) and Friedman, in turn,  transferred $8,000 to UTI on or about  that same date.

b.    On July 12, 2001, Sylvia Friedman transferred $20,000 from her personal account to Friedman's personal account and Friedman, in turn, transferred $20,000 to UTI on or about that same date.

c.    On August 9, 2001, Sylvia Friedman transferred $20,000 from her personal account to Friedman's personal account and Friedman, in turn, transferred $20,000 to UTI on or about that same date.

---

[2] This sum was roughly derived by subtracting the prior mortgage ($84,618) from the value of the home ($375,000) and then dividing that number by two.

d.      On August 16, 2001, Sylvia Friedman transferred $83,500 from her personal account to UTI's account at Sterling Bank.

e.      On December 17, 2001, Sylvia Friedman transferred $20,000 from her personal account to UTI's account at Sterling Bank.

See Friedman Affidavit at 7-8 and Exhibits D-F of Friedman Affidavit.

The Rosner transfers occurred as follows:

1.      In August 2001, Rosner and Judy Rosner obtained a second mortgage on their home.[3]

2.      Judy Rosner then paid Rosner $292,971[4] in consideration for the transfer in the following intervals:

a.      On August 23, 2001, Judy Rosner paid $103,000 to Firmode International Company ("Firmode"), a creditor of UTI.

b.      On August 23, 2001, Judy Rosner transferred $5,000 to UTI.

c.      On November 30, 2001, Judy Rosner paid $20,648 to Hind International Inv. Ltd. ("Hind"), a supplier and creditor of UTI.

d.      On December 1, 2001, Judy Rosner paid $18,487 to Hind.

e.      On December 2, 2001, Judy Rosner paid $33,286 to Hind.

f.      On December 18, 2001, Judy Rosner paid $112,550 to Firmode.

See Rosner Affidavit at 8-9; Exhibits H-K  of Rosner Affidavit.

The defendants hoped that these efforts would revitalize UTI's business.  Further, they hoped, that once improved UTI would be able to pay its remaining creditors and service the

---

[3] Rosner explained that in November 2000 he directed his attorney to transfer his half-interest in his house to Judy Rosner.  However, his attorney failed to file the deed.  Since time was of the essence, the Rosners closed on the financing in both of their names in August 2001.  Although the net proceeds were put in the Rosners' joint account, Judy Rosner used this money as her own, and paid UTI and its creditors Rosner's share of the proceeds.  In 2002, the deed dated November 18, 2000, transferring Rosner's half-interest was recorded.  Thereafter, in November 2002, the Rosners transferred their joint loan to Judy Rosner, individually.

[4] This sum was roughly derived by subtracting the prior mortgage ($73,000) from the value of the home ($575,000) and then dividing that number by two.

Merrill loan.  However, these efforts were not successful.  UTI soon defaulted on its loan to Merrill.

In November 2001, Merrill commenced an action against UTI and each of the defendants in the Supreme Court of the State of New York, County of New York, to recover the loan balance.   On November 20, 2002, a judgement in the sum of $656,198.27 was entered in Merrill's favor against UTI and the defendants.  On December 11, 2003, the defendants filed individual petitions for relief under Chapter 7 of the Bankruptcy Code.

On June 29, 2004, Merrill filed complaints against the defendants, instituting adversary proceedings objecting to each debtor's request for a Chapter 7 discharge.  Specifically, Merrill sought to deny the defendants the discharge of their debts pursuant to 11 U.S.C. §§523(a)(2), 727(a).   On August 19, 2004, Rosner and Friedman filed answers that generally denied the allegations contained in the complaint and raised affirmative defenses.  On September 22, 2004, an amended complaint substituting Cadleway for Merrill was filed.  Prior to this date, Cadleway had purchased the state judgment and pending litigation claims against the defendants from Merrill.  On November 1, 2004, Rosner and Friedman filed answers to the amended complaint.  On January 10, 2006, the plaintiff filed the instant motion seeking partial summary judgment on its claims under 11 U.S.C. §§727(a)(2)(A), 727(a)(4), and 727(a)(5).  The plaintiff also seeks dismissal of the defendants' Third, Fourth, Fifth, Sixth, Seventh and Eighth affirmative Defense as a matter of law.   On March 6, 2006, the defendants filed a Joint Motion in Opposition to Plaintiff's Summary Judgment Motion.   On March 17, 2006, the plaintiff filed a Reply Memorandum of Law in further support of its motion for partial summary judgment.

## DISCUSSION

**1.**          <u>**Standard for Summary Judgment**</u>

   A court may properly grant summary judgment only when there is no "genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  See also, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 242,247, 106 S.Ct. 2548,2552, 91 L.Ed.2d 202 (1986); <u>Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.</u>, 219 F.3d 104, 107 (2d Cir. 2000).   When deciding whether to grant a motion for summary judgment, a court must determine if there are any factual issues to be tried. <u>See</u> Fed. R. Civ. P. 56(c), <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,250, 206 S.Ct. 2505, 2511, 91 L.,Ed.2d 202 (1986).  At the same time, ambiguities and reasonable inferences must be drawn against the moving party. Id.

   A party opposing a summary judgment motion "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." <u>In re Gangemi</u>, 291 B.R. 242,245 (E.D.N.Y. 2003)(citing <u>Anderson</u>, 477 U.S. at 248)(internal citations omitted).   "When no rational jury could find in favor of the nonmoving party or the evidence is so slight, there is no genuine issue of material fact and granting summary judgment is proper."   <u>Gallo v. Prudential Residential Servs., L.P.</u>, 22 F.3d 1219,1224 (2d. Cir.1994)(internal citations omitted).

   It is appropriate to strictly scrutinize a motion for summary judgment filed by a plaintiff who objects to a discharge of a debtor. <u>See</u> <u>In re Smith</u>, 2004 WL 966303,*2 (Bankr. D. Conn. April 20, 2004).   The law carries a presumption in favor of the debtor, since the denial of a discharge "imposes an extreme penalty for wrongdoing."   <u>In re Chalasani</u>, 92 F.3d 1300,1310 (2d Cir.1996).

     Rare indeed will be the instance where the Court can adjudge with confidence, on a "paper" record alone, that a debtor engaged in discharge-disqualifying

> conduct with the statutorily-required level of scienter and intention.  Pivotal
> factual issues involved in discharge proceedings often turn on the credibility of
> witnesses; and an essential tool in the Court's assessment of credibility is its
> observation of the demeanor of the witnesses. Such observation is, of course,
> impossible in the context of a summary judgment matter.

In re Smith, 2004 WL 966303 at *2.

In the instant motion, The plaintiff raises three objections to discharging the debts of the defendants.  To prevail, The plaintiff needs only to prove that it is entitled to summary judgment under one subsection of §727(a).  In re Handel, 266 B.R. 585,587 (Bankr. S.D.N.Y. 2001)("Proof of conduct satisfying any one of the subsections is enough to justify a denial of debtor's request for a discharge").  The Court will separately review each substantive claim taking into consideration the summary judgment standards stated above.

A.          11 U.S.C. §727 (a) (2) (A)

The plaintiff alleges that the defendants, within one year of the petition date, transferred the half interests in their Staten Island homes to their wives with the intent to hinder, delay or defraud their creditors.  To prevail on summary judgment under section 727(a)(2)(A), The plaintiff must prove:

1.    That the act complained of was done within the one-year period prior to the date of filing the petition;

2.    That the act was done with the actual intent to hinder, delay, or defraud a creditor;

3.    That the act was that of the debtor or his duly authorized agent;

4.     That the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done; and

5.    That summary judgment is appropriate because there are no material facts with respect to any of the four elements listed above.

See In re Halperin, 215 B.R. 321,328 (Bankr. E.D.N.Y. 1997); Najjar v. Kablaoui (In re

Kablaoui), 196 B.R. 705,708 (Bankr. S.D.N.Y. 1996); Minsky v. Silverstein (In re Silverstein),

151 B.R. 657,659 (Bankr. E.D.N.Y. 1993).

      The parties agree that only the first two elements are in issue.  The plaintiff

alleges that the defendants' discharge should be denied because the defendants transferred their

interests in their homes to shield their property from their creditors.   The plaintiff points to the

period of time of  several months for Freidman, and years in Rosner's case, between the transfers

and the refinancing alleged to be the consideration for the deeds, and states that the delay proves

that the consideration was an afterthought, concocted to shelter the gratuitous transfers.  See

Plaintiff's Memo at 18. The plaintiff further argues that the alleged consideration was a sham

since the agreements were not memorialized in writing and the deeds were recorded without

payment of any real property transfer taxes to the city or state of New York.  Id. at 19-20.  The

plaintiff also asserts that although the transfers occurred more than one year prior to the

defendants' petition filing date, the defendants had retained an equitable interest in their homes

because they continued to reside there and shared fully in paying the mortgage and other

household expenses. Id. at 11-12; Plaintiff's Reply Memorandum of Law in Further Support of

its Motion for Partial Summary Judgment dated March 17, 2006 ("Plaintiff's Reply Memo") at

4-6.

      The defendants argue that the transfers were made for motivations that "were

honest and reasonable under the circumstances and for full and fair consideration." Defendants'

Memo at 13.  They explain that they made the transfers when UTI's business was declining due

to the surge in bankruptcy filings of their largest customers; they needed to invest more capital

into UTI and their wives would not allow them to put second mortgages on their residences.  The

defendants allege that they received sums from their wives equal to the full value of each

husband's interest and that complete banking records of the application of the monies establish

the consideration. <u>Id</u>. at 19.  Moreover, Rosner asserts that the delay in filing the deed

transferring his interest to his wife was due to the  mistake of his attorney, who submitted an

affidavit confirming this fact.  <u>See</u> Rosner Affidavit at 8; Exhibit E of Rosner Affidavit.  The

defendants claim that the existence of a writing is not necessary under New York law.

Defendants' Memo at 17.  They also explain that the transfer taxes were not paid because they

were not "intimately familiar with the relevant transfer taxes" and their attorney never raised the

issue. <u>See</u> Rosner Affidavit at 10. Furthermore, while the defendants concede that they reside

with their wives and now fully share with them the costs of household expenses, they claim that

their wives paid the mortgage, real estate taxes and insurance premiums in the months after the

transfers occurred. <u>Id</u>. at 14.  The defendants conclude that they do not retain any equitable

interest in their homes.  For these reasons they argue that no basis exists to object to their

discharge, even though the transfers occurred one year before the petition date.

      The continuing concealment doctrine extends the reach of  §727(a)(2)(A) to

transfers that occurred more than a year before a bankruptcy filing.  The doctrine applies when a

debtor retains a secret interest in transferred property that continues into the year before

bankruptcy. <u>See</u> <u>In re Silverstein</u>, 151 B.R. at 661.   An interest which gives rise to the

application of this doctrine might be a right to live in a house rent-free or a right to reconveyance

of the property in the future. 6 Lawrence P. King et. al., Collier on Bankruptcy ¶ 727.02[2][b] at

727-14 (15th ed. 2006).  However, regardless what the interest retained is, the plaintiff must

prove that the debtor's continued concealment was actually intended to hinder and delay or defraud his creditors.  See In re Portnoy, 201 B.R. 685,695-96 (Bankr. S.D.N.Y. 1996).

Although actual intent must be shown, a finding of actual intent may be based upon circumstantial evidence or on inferences drawn from a course of conduct.  6 Lawrence P. King et. al., Collier on Bankruptcy ¶ 727.02[3][b] at 727-18 (15th ed. 2006).  This is because debtors rarely announce their intent to shield their assets from creditors' attack despite retaining the equitable benefit of those assets.  Thus, their intention must be gleaned from inferences drawn from their course of conduct and the credibility of their statements. See In re Berman, 100 B.R. 640,647 (Bankr. E.D.N.Y. 1989)   In Salomon v. Kaiser (In re Kaiser), the Second Circuit stated that an intent to defraud can be inferred when the following "badges of fraud" are present:

1. The lack or inadequacy of consideration;
2. A family, friendship, or close associate relationship between the parties;
3. The retention of possession, benefit or use of the property in question;
4. The financial condition of the party sought to be charged both before and after the transaction in question;
5. The existence or cumulative effect of the pattern or series of transactions or course of conduct after incurring of debt, on said of financial difficulties or pendency or threat of suit by creditors; and
6. The general chronology of events and transactions under inquiry.

722 F.2d 1574, 1582-83 (2d Cir.1983).

The defendants have set forth specific facts, which if accepted as true, show that a question of fact remains as to whether the debtors had the requisite intent required under §727(a)(2)(A).  Only after trial, where the Court has an opportunity to observe the defendants' evidence and the credibility of their witnesses, will the Court be prepared to determine whether the defendants intended to hinder, delay, or defraud  The plaintiff when they made these transfers. See e.g., Citizens Bank of Clearwater v. Hunt, 927 F.2d 707,711 (2d Cir. 1991) (

determination as to whether the property was transferred with actual intent to hinder creditors involves issues of credibility and should be resolved by the fact finder after trial).

B.      11 U.S.C. §727 (a) (4) (A)

The plaintiff alleges that the defendants made a false oath when they failed to include in their bankruptcy schedules the value of their Staten Island homes, household goods and furnishings.   The defendants contend that their schedules and statements of financial affairs are accurate.  They assert that the Staten Island properties are not listed on their schedules because they were not the owners of the properties on th petition date.

Section 727(a) (4)(A) of the Bankruptcy Code provides in relevant part, that: "the court shall grant the debtor a discharge, unless... the debtor knowingly and fraudulently, or in connection with the case... made a false oath or account[.]" 11 U.S.C. §727(a)(4)(A).  Thus, to prevail, the objecting creditor must demonstrate that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." In re Klutchko, 338 B.R. 554,567 (Bankr. S.D.N.Y 2005)(citing Carlucci & Legum v. Murray, 249 B.R. 223, 228 (E.D.N.Y 2000)).

Under this section, an omission alone is insufficient to deny a debtor's discharge. In re Klutchko,338 B.R. at 568; In re Handel, 266 B.R. at 590.  Nor will the statute be applied to the debtor's detriment if the debtor's omission or error resulted from an inadvertent or honest mistake. Id.  Rather, the analysis under §727 (a) (4)(A) is similar to the analysis under §727 (a) (2) in that a discharge may only be barred if the plaintiff is able to establish that the debtors knowingly and fraudulently omitted or misrepresented information in their schedules.   Further, a

statement must be "material."  A statement is material for purposes of this section if it is

pertinent to the discovery of assets.  In re Klutchko,338 B.R. at 568.   A material matter is one

bearing a relationship to the debtor's business, transactions or estate, which might lead to the

discovery of assets, business dealings or the existence or disposition of the debtor's property. Id.

To determine whether the defendants' fraudulently omitted material information

from their schedules and statements of financial affairs, the Court must determine whether the

transfers themselves were fraudulent.  Therefore, the Court concludes that a question of fact

remains.  The Court also denies the plaintiff's Motion for Summary Judgment with respect to

defendants' omissions in listing their household goods and furnishings.  While the defendants

seem to have conceded that they jointly own the household goods and furnishings[5], summary

judgment is not appropriate upon the facts presently before the Court.

C.      11 U.S.C. §727 (a) (5)

The plaintiff  requests summary judgment on its third count in its complaint

alleging that the defendants: (1) failed to adequately explain each bungalow's $45,000 decline in

value; (2) failed to include in their bankruptcy schedules the  jewelry and furs which were listed

on their personal financial statements submitted to Merrill with their loan application; and (3)

failed to include in their schedules their half-interest in their primary residences.   Section

727(a)(5) provides that a debtor's discharge will be denied when the debtor has "failed to explain

satisfactorily ... any loss of assets or deficiency of assets."  11 U.S.C. §727(a)(5).   This section is

broadly interpreted to include any unexplained disappearance or shortage of assets. In re Handel,

---

[5] The defendants admitted in their deposition testimony that they failed to disclose in their bankruptcy schedules their half-interests in the household goods and furnishings.  Defendant Rosner, when confronted with this fact, responded "I guess if you look back, I do own half or it."  See Plaintiff's Reply Memo, p.12.

266 B.R. at 590. <u>See also</u>,  6 Lawrence P. King et. al., Collier on Bankruptcy ¶ 727.02[3][b] at

727-47-48 (15th ed. 2006).   However, unlike an objection under Code Sections 727(a)(2) or

727(a)(4), Code Section §727 (a)(5) does not require proof of fraudulent intent on the part of the

debtor. <u>In re Halperin</u>, 215 B.R at 333.

   Once the movant establishes that there is a loss or deficiency of assets,  the

burden shifts to the debtor to make a satisfactory explanation. <u>In re Handel</u>, 266 B.R. at 590-91.

"The debtor's explanation does not have to be meritorious, but it must at least 'satisfy the

bankruptcy judge that the debtor has not hidden or improperly shielded assets.'" <u>In re Halperin</u>,

215 B.R at 333 (internal citations omitted).

   Generally, an objection to discharge under Section 727(a)(5) is based upon a

discrepancy between a pre-petition financial statement and the debtor's bankruptcy schedules.

Id.  In the present cases, The plaintiff relies upon the personal financial statements the

defendants each submitted to Merrill, which lists the assets of both the defendants and their

wives.   Specifically, The plaintiff alleges that each of the defendants' personal financial

statements described assets, including a Staten Island home, a summer bungalow worth $75,000,

as well as jewelry and furs.    In contrast, the schedules submitted as part of defendants'

bankruptcy petitions list the bungalows as being worth approximately $30,000 (with defendants'

share equaling $15,000 each) and they fail to include either of the defendants' primary

residences, jewelry or furs. <u>See</u> Plaintiff's Memo at 14-16.

   The defendants oppose the Section 727(a)(5) objection.  They attribute the decline

in value of the bungalows to the revitalization that occurred in the Catskill area.  They explain

that in 1999 their bungalow community "was among the only Modern Orthodox Jewish

Communit[y] in the Catskill region and these bungalows were very much in demand, even though they were not winterized." <u>See</u> Rosner Affidavit at 5; Friedman Affidavit at 5. However, in the ensuing four years, these communities multiplied with many of the newer communities having winterized bungalows which could be utilized year-round while the defendants' units could only be used three to four months per year. <u>Id</u>. The increased supply caused the defendant's bungalows to decline drastically in value.

The defendants also allege that the personal property items, specifically the jewelry and furs, were not listed on their schedules because these were items which their wives owned. <u>See</u> Defendants Memo at 22. They explain that these items were listed on their personal financial statements because these statements reflected property owned by each defendant and his wife, but not necessarily owned by both. <u>Id</u>. The defendants also allege that they received consideration for the transfers of their interests in their Staten Island homes and these funds were invested into UTI.

In the Court's judgment, the defendants have provided satisfactory explanations for any loss or deficiency in the assets described in the 1999 financial statement. They adequately explain why the value of the bungalows decreased dramatically over the four year span. They also explained that the 1999 financial statement was a "joint" one which failed to distinguish between those assets owned jointly and owned individually. Furthermore, the bank records submitted by the defendants support that the money received from the transfer of the Staten Island properties was invested into UTI.   Since these explanations are taken as true on a motion for summary judgment, the Court finds that there are issues of material fact that must be determined at trial. Therefore, the plaintiff's summary judgment motion seeking to deny the

defendants discharge pursuant to section 727(a)(5) is denied.

**2.**          **Defendants' Affirmative Defenses**

The plaintiff requests that the Court dismiss the defendants' Third, Fourth, Fifth, Sixth, Seventh and Eighth Affirmative Defense as a matter of law.  The plaintiff claims that the defendants' Third affirmative defense of waiver is "absurd on its face" because The plaintiff "cannot show any way in which Cadleway or its predecessor, [Merrill] could be deemed to have waived their rights" to object to the defendants' discharge. See Plaintiff's Memo at 23.   The plaintiff contends that the Fourth and Fifth Affirmative Defenses "are in actuality simply conclusory denials of established facts, rather than true affirmative defenses, and should likewise be dismissed." Id.  The plaintiff alleges that the defendants' Sixth Affirmative Defense of champerty must be dismissed because the plaintiff does not have standing to raise this defense. Id. at 23-25.   The plaintiff argues that the defendants' Seventh Affirmative Defense is based on obsolete law and its Eighth Affirmative Defense is an incorrect statement of New York Law.  Id. at 27-29.

An "affirmative defense" is a defense that raises new facts and arguments that will defeat the plaintiff's claim, even if all the allegations in the complaint are true. Black's Law Dictionary (7th ed. 1999).  Since defendants are required under Rule 8(c) of the Federal Rules of Civil Procedure to affirmatively assert in their responsive pleadings any "matter constituting an avoidance or affirmative defense[,]" many will plead matters that are not technically an affirmative defense, to preserve the defense in case its deemed to fall within the purview of Rule 8(c). Fed.R.Civ.P. 8(c).  See also, 5 Fed. Prac. & Proc. Civ.3d §1271. Generally a defendant "will not be penalized ... when [an] affirmative pleading proves to be unnecessary."  Id.

Where a plaintiff uses a summary judgment motion to challenge the legal sufficiency of an affirmative defense, the plaintiff may satisfy its Rule 56 burden by showing that the defendant failed to set forth evidence concerning an element of the affirmative defense. Federal Deposit Insurance Corp. v. Giammettei, 34 F.3d 51, 54-55 (2d Cir. 1994). "After all, in cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the [defendant's affirmative defense] necessarily renders all other facts immaterial." Id. citing Celotex Corp. v. Catrett, 477 U.S. at 323.   However, whatever evidence there is must be construed in a light most favorable to the defendant.  Ibid.

A.      Third Affirmative Defense

In their Third Affirmative Defense, the defendants allege that the plaintiff waived its right to assert that the defendants are not entitled to a discharge under 11 U.S.C. §523(a)(2). The defendants appear to argue that since Merrill based the loan and the amount of credit line solely upon UTI's financial condition and not on the value of the defendants' real and personal property, the plaintiff cannot now claim that Merrill relied on this information.   The defendants contend that Merrill's verbal approval of UTI line of credit prior to the defendants's submission of their personal financial information is ample proof of Merrill's lack of reliance on the personal financial information.  See Defendants' Memo at 23.  In addition, the defendants contend that the value of their property was insubstantial in the context of the loan explaining Merrill's failure to appraise their property.  See Rosner Affidavit at 4; Friedman Affidavit at 4. Viewing these allegations in a light most favorable to the defendants, this Court can not

-18-

summarily decide that Merrill did not deliberately surrender its legal right to challenge the truth of the defendants' personal financial statements. This is a fact based question that must be decided at trial. Accordingly, the Court denies The plaintiff's motion to dismiss the defendants' Third Affirmative Defense.

B.    Fourth and Fifth Affirmative Defenses

The defendants allege that the Fourth Affirmative Defense "asserts in affirmative language a denial of the claims that are asserted in the Third and Fourth Causes of Actions and the Fifth Affirmative Defense "asserts a denial that the defendants transferred any assets within a year of commencing the bankruptcy cases." Defendants' Memo at 23. While the Court is aware that these defenses are not technically affirmative defenses, this Court shall not prematurely dismiss these defenses when they are not prejudicing the plaintiff. See Siuda v. Robertson Transformer Co., 1992 WL 79311, *3 (D.Kan. March 16, 1992) ("Motions to strike [affirmative defenses] are generally disfavored ...and usually denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.") (internal quotations omitted).

C.    Sixth Affirmative Defense

Champerty is "[a] bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds." Black's Law Dictionary (7th ed. 1999). In Illinois[6], the defense of champerty "can only be interposed in an action between the parties to the champertous contract." Henderson v. Kibbie, 211 Ill. 556,564, 71 N.E. 1091,1094 (1904)(internal citations omitted). See also, Oil, Inc.

---

[6] The governing law is that of Illinois, as both the loan documents between Merrill and the defendants and the assignment documents between Merrill and The plaintiff expressly provide that Illinois law governs.

v. Martin, 381 Ill. 11, 44 N.E.2d 596 (1942).  In the instant case, Merrill and The plaintiff were the parties to the allegedly champertous contract.  Therefore, the defendants lack standing to raise this defense.  Accordingly, the Court grants the plaintiff's motion to dismiss the Sixth Affirmative Defense.

D.    Seventh Affirmative Defense

The defendants' Seventh Affirmative Defense is that the plaintiff failed to provide a statement setting forth the terms of the transfer from Merrill to the plaintiff.  The defendants appear to raise this defense based on former Bankruptcy Rule 3001(e)(1) which required a plaintiff to provide a statement when claims were transferred.  As of 1991, this requirement only applies to transfers for security.    Accordingly, the Court grants the plaintiff's motion to dismiss the Seventh Affirmative Defense.

E.    Eighth Affirmative Defense

The defendants' Eighth Affirmative Defense contends that the plaintiff lacks standing to sue because the plaintiff is not authorized to do business in New York.   Under New York law, a foreign corporation that does not do business in the state is not barred from maintaining an action in the state.  Rather, a foreign corporation is only barred from commencing an action in New York if the foreign corporation actually does business in the state without the proper authority and fails to pay all fees and taxes imposed under state law. See New York Business Corporation Law § 1301.

A defendant bears the burden of demonstrating that the plaintiff does business in the state. Uribe v. Merchants Bank of New York, 266 A.D.2d 21, 697 N.Y.S.2d  279 (1st Dep't 1991).  The defendants in this case have alleged that The plaintiff is not doing

business in New York.  Therefore, the Court concludes that the defendants do not have standing

to raise this defense.  Accordingly, the Court grants the plaintiff's motion to dismiss the

defendants' Eighth Affirmative Defense.

## <u>CONCLUSION</u>

For the reasons stated above, the Court finds that there are material issues of fact

to be tried and denies the plaintiff's motion for summary judgment seeking denial of the

defendants' discharge under Code §§727(a)(2)(A), 727 (a)(4)(A) and 727 (a)(6).  The Court also

denies the plaintiff's motion to dismiss the defendants' Third, Fourth and Fifth Affirmative

Defenses.  The Court grants the plaintiff's motion to dismiss the defendants' Sixth, Seventh and

Eight Affirmative Defenses.

IT IS SO ORDERED

Dated:        Brooklyn, New York
              May 15,  2006


                                        <u>**s/Dennis E. Milton**</u>
                                        DENNIS E. MILTON
                                        United States Bankruptcy Judge